AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Southern District of Ohio

United States of America
v.

Steevenson Persona

*Defendant(s)*

Case No. 3:25-mj-199

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of April 19, 2021 in the county of Clark in the Southern District of Ohio, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 1343 | Wire Fraud |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

BRANSON YEAKLEY Digitally signed by BRANSON T YEAKLEY Date: 2025.05.01 11:00:42 -04'00'

*Complainant's signature*

HSI SA Branson Yeakley

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by Telephone (reliable electronic means).

Date: May 1, 2025

City and state: Dayton, Ohio

Caroline H. Gentry
United States Magistrate Judge

# AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Branson Yeakley, your Affiant, being duly sworn, depose and state that:

1. This affidavit is submitted in support of an application for an arrest warrant for Steevenson PERSONA for committing wire fraud, in violation of 18 U.S.C. § 1343, on or about April 19, 2021.

2. I have been a Special Agent (SA) for the United States government since September 2019. I began as a SA with the Air Force Office of Special Investigations (OSI) until transferring to Homeland Security Investigations (HSI) in December 2023. As part of my training, I attended the Federal Law Enforcement Training Center (FLETC) Criminal Investigator Training Program (CITP), Air Force OSI Basic Special Investigator's Course (BSIC), and HSI Special Agent Training Program (HSISAT) where I received training in financial crimes, including but not limited to wire fraud, federal money laundering laws, bank fraud, and false statements in connection with government programs. I have also received subsequent training, both formal and informal, on these types of offenses, including those offenses described in this affidavit.

3. In my role as an OSI SA, I investigated financial crimes, including being assigned to a government procurement fraud office. I reviewed hundreds of fraudulent Paycheck Protection Program (PPP) applications, gaining experience in identifying common indicators of fraudulent applications.

4. As an HSI SA, I am a federal law enforcement officer, and my duties include the enforcement of more than 400 federal statutes within the Dayton and Cincinnati, Ohio area.

I continue to investigate financial crimes and fraud, including identifying fraudulent PPP applications and presenting cases for prosecution.

5. The information set forth below is not a complete recitation of all the facts known in this entire investigation. Rather, it is specific information that I believe supports probable cause for the issuance of the requested arrest warrant.

## FACTS IN SUPPORT OF PROBABLE CAUSE

6. The Paycheck Protection Program ("PPP") was a COVID-19 pandemic relief program administered by the Small Business Administration ("SBA") that provided forgivable loans to small businesses for job retention and certain other expenses. The PPP permitted participating third-party lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities, rent/mortgage, accounts payable and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic. PPP loans were fully guaranteed by the SBA.

7. To obtain a PPP loan, a qualifying business had to submit a PPP loan application, which was supposed to be signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, including that the business was in operation-and either had employees for whom it paid salaries and payroll taxes or paid independent contractors. A business applying for a PPP loan was required to provide documentation showing its payroll expenses, such as filed federal income tax documents.

8. PPP loan applications were electronically submitted or caused to be submitted by the borrower and received through SBA servers located in Virginia or Oregon. Once approved,

the business received the PPP loan proceeds via an electronic funds transfer from the third-party lender to a financial account under the control of the business.

9. The proceeds of a PPP loan could be used for certain specified business related items, such as payroll costs, costs related to the continuation of group health care benefits, or mortgage interest payments. The proceeds of a PPP loan were not permitted to be used by the borrowers to purchase consumer goods, automobiles, personal residences, clothing, jewelry, to pay the borrower's personal federal income taxes, or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

10. Blue Acorn PPP LLC ("Blue Acorn") was a lending service that among other services worked with companies to assist businesses in accessing the Small Business Administration's Paycheck Protection Program.

11. Over the past several months, HSI has investigated Steevenson PERSONA ("PERSONA") for numerous potential violations of federal criminal law, including marriage fraud, false statements to purchase a firearm as an illegal alien, money laundering, false statements to obtain an immigration benefits, and wire fraud.

FRADULENT PPP LOAN

12. In October 2024, I conducted open-source research on PERSONA, an individual who Department of Homeland Security (DHS) records indicated was an alien from Haiti with no lawful right to remain in the United States, who was living in Springfield, Ohio. This research disclosed that PERSONA received a PPP loan in April 2021.

13. On October 31, 2024, I served a customs summons[1] to Blue Acorn for records associated with PERSONA's PPP loan application. On November 4, 2024, Blue Acorn responded to the summons, which disclosed the following notable information:

a. PERSONA's PPP loan application was created on April 18, 2021, and submitted on April 19, 2021. The SBA approved this application on April 29, 2021, granting him a $20,832 PPP loan.[2]

b. PERSONA's application listed his personal information as well as contact information, including his email address, phone number, and home address as: personasteeve@gmail.com, 937-250-8615, and 433 Neosha Ave, Springfield, Ohio.

c. PERSONA claimed he was an independent contractor established June 12, 2019, and he used the NAICS code indicating he claimed to be a "Driver" (Uber, Lyft, Ride Share, Taxi, Taxicab, Cab etc).

d. PERSONA claimed his business earned $110,000 in 2020 and had $37,000 in expenses.

e. PERSONA wanted his PPP loan deposited into an account at Fifth Third Bank, although he provided a PNC Bank statement from January 28, 2020, to February 24, 2020, as proof of his business.

---

1. 19 U.S.C. § 1509 provides authority for the issuance of customs summons for ensuring compliance with the laws of the United States administered by the United States Customs Service (USCS). Subsequent organizational changes, including section 403(1) of the Homeland Security Act of 2002, dissolved the USCS and extended the authority to issue these custom summonses to HSI.

2. In general, the amount of a PPP loan an independent contractor with no employees was eligible for was based on the claimed income in 2019 or 2020, up to a maximum of approximately $100,000 in income, which resulted in a PPP loan of approximately $20,832.

f. Blue Acorn used a service by Onfido[3] to verify PERSONA's identity, in which PERSONA was required to upload a picture of his Ohio ID card and provide a selfie of himself. I reviewed the identification card and selfie, and based on my experience with Onfido and Ohio identification, as well as a review of images of PERSONA, they appeared consistent with PERSONA taking a selfie of himself and a picture of his ID, and they did not appear to be fake.

14. As part of his application, PERSONA was required to digitally sign a document (SBA Form 2483-C) which stated, "I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 U.S.C. 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 U.S.C. 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 U.S.C. 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000." As a part of this form, PERSONA certified:

a. The Applicant was in operation on February 15, 2020, has not permanently closed, and was either an eligible self-employed individual, independent contractor, or sole proprietorship with no employees, or had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC.

3. Onfido is a technology company that helps businesses verify people's identities using a photo-based identity document, a selfie, and artificial intelligence algorithms.

b. The funds will be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the Paycheck Protection Program Rules; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud.

c. In 2020, PERSONA earned a gross income of $110,000 from his business.

15. Based on my training and experience, PERSONA's loan had several indicators that it was fraudulent on its face, including but not necessarily limited to:

a. The uploaded PNC Bank statement had minimal transactions and did not appear to be consistent with a driving business in operation since 2019.

b. Blue Acorn PPP used a service from Plaid to receive the balance of two of PERSONA's accounts, which were $44.05 and $0.46. This low balance is not consistent with a business earning $110,000 in revenue a year.

c. The revenue of $110,000 was likely chosen in part to maximize the loan amount. This revenue amount is extremely unlikely for a ride share or taxi driver, especially in Springfield, Ohio, where the per capita income for this time frame was well under $40,000.

d. If a person did in fact make $110,000 in revenue as a ride share driver in Springfield, Ohio (such as by working 10+ hours all 365 days), they would almost certainly have much more than $27,000 in vehicle expenses.

16. On or about March 19, 2025, the Ohio Department of Taxation responded to a grand jury subpoena for records associated with PERSONA, which disclosed the following notable information:

    a. PERSONA did not file an Ohio individual state tax return for 2019.

    b. PERSONA's 2020 return was filed listing himself as a single resident of Ohio, with a home address located at 433 Neosha Ave, Springfield, Ohio. He claimed a federal adjusted gross income (AGI) of $11,785, coming from W-2's from Amazon.com Services LLC and Employbridge LLC. He had no deductions from his federal AGI for state tax purposes.[4]

    c. His 2020 state refund was sent to the same Fifth Third Bank account that his PPP loan was sent to.[5]

17. On April 17, 2025, I interviewed PERSONA in a non-custodial setting. He provided the following statements:

    a. PERSONA worked as a taxi driver for "just a couple months" in 2020 or 2021. He stated he could not recall the amount he earned over the couple of months, but that it was not a lot of money.

    b. PERSONA confirmed he received a PPP loan for $20,832.

    c. PERSONA confirmed he remembered applying for this loan.

---

4. In Ohio, it is common for small businesses to be able to deduct some or all business income from state tax. The lack of a deduction indicated that he likely did not have business income.
5. This confirmed that this Fifth Third Bank account did in fact belong to PERSONA, and the loan was not the result of identity theft.

d. PERSONA confirmed it was his information in the loan application, including email address, phone number, and address.

e. Somebody helped PERSONA with his PPP loan application, but this person was in Florida and PERSONA could not remember his name.

f. When asked if he earned $110,000 in 2020 from being a taxi driver, PERSONA replied, "I am not sure it was that much." I then asked PERSONA to estimate his taxi earnings for 2020, and PERSONA stated he was working a job at the time too, and if you added them together with his taxi income, it "should be" $110,000, and then stated it "might be" that amount.

18. At this point in the interview, I reminded PERSONA that it was a voluntary interview that he could terminate at any time. I also provided an admonishment to PERSONA that 18 U.S. Code § 1001 made it a federal offense to lie to a federal agent. I again asked him questions regarding his PPP application. When asked if PERSONA earned $110,000 in 2020 from being a taxi driver, PERSONA stated he did not earn that amount as a taxi driver, but that it might be what he earned "in general." I then asked PERSONA to confirm statements, and he made affirmative sounds or head nods that: PERSONA applied for a PPP loan through Blue Acorn, he told Blue Acorn that he had a taxi-cab business, and he told Blue Acorn this business had $110,000 in revenue in 2020. PERSONA then tried to claim that these were true statements, but he stated the person who helped him with the

application asked for his W2's and how much he made on his taxis and added them together to equal that. [6]

19. Based on my training and experience, including previous investigation of PPP loan fraud involving Blue Acorn, as well as the facts learned in this investigation, in the process of obtaining this money (the $20,832 PPP loan) by means of false or fraudulent pretenses, representations, or promises, there is probable cause PERSONA transmitted or caused to be transmitted by means of wire or radio communication in interstate or foreign commerce writings, signs, signals, pictures, and/or sounds, including but not necessarily limited to:

   a. Blue Acorn utilized computer servers / data centers in the state of Virginia, as part of conducting nationwide business operations. When signing into the PPP loan application, PERSONA (or the person assisting him with the loan application) would have sent wire communications back and forth between the Blue Acorn servers in Virginia and PERSONA in Ohio and/or his helper in Florida.

   b. Further, although Blue Acorn assisted in processing for this loan, the actual lender was Capital Plus Financial, which is located in Texas. PERSONA would have caused wires to be sent in communication to and from Blue Acorn in Virginia and Capital Plus Financial in Texas.

   c. When a person uses Blue Acorn to apply for a PPP loan, Blue Acorn sends emails and text messages to the accounts listed on the application, including status updates on the account. PERSONA confirmed these were his accounts, so they would have

6. As shown above from the Ohio Department of Taxation, PERSONA's W2 income in 2020 was negligible compared to the claimed income. This is especially not plausible when combined with PERSONA's statement that he worked as a taxi driver for "just a couple months."

been received on his device(s) located in Ohio, and these wires would have been sent in interstate commerce from Blue Acorns servers outside of Ohio, through Google's servers located in various states, to arrive at his device(s) in Ohio.

## CONCLUSION

20. Based on the foregoing, there is probable cause to believe that PERSONA has committed a violation of 18 U.S.C. § 1343, Wire Fraud, and I request that an arrest warrant be issued to bring PERSONA before this Court based on the allegations contained herein.

I declare under penalty and perjury that the foregoing is true and correct to the best of my knowledge.

BRANSON T YEAKLEY

Digitally signed by BRANSON T YEAKLEY
Date: 2025.05.01 11:00:16 -04'00'

Branson Trey Yeakley, Special Agent,
Homeland Security Investigations

Subscribed and Sworn to me via reliable electronic means (telephone) on this 1st day of May, 2025.

Caroline H. Gentry
United States Magistrate Judge

UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF OHIO